Carl E. PAGAN, Appellant,

v.

Lewis MURRAY, Appellee.

No. 91–CV–1371.

District of Columbia Court of Appeals.

Submitted May 4, 1993.
Decided July 19, 1993.

Brenda C. Wagner, Washington, DC, was on the brief, for appellant.

Charles H. Acker, III, Washington, DC, was on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

STEADMAN, Associate Judge:

Appellant Pagan ("seller") appeals from a judgment after a bench trial in favor of appellee Murray ("purchaser"), awarding purchaser damages for breach of a con-

tract for the sale of single-family residential real property. The principal dispute here [1] is over the interpretation and reconciliation of two parts of the contract: [2] one, a provision calling for settlement within forty five days "or as soon thereafter" as certain title and loan matters could be resolved; the other, a provision requiring that the statutory rights of existing tenants in the District of Columbia to purchase the property, see D.C.Code § 45–1631 to –1638 (1990), be fully respected and complied with.[3] The dispute here arose when seller informed purchaser upon the expira-

1. Seller's arguments of estoppel and laches were made to the trial court and implicitly rejected. We are presented with no basis to disturb this decision. Nor do we see any grounds to upset the trial court's determination of the proper amount of damages. *See Basiliko v. Pargo Corp.*, 532 A.2d 1346, 1348 (D.C.1987).

2. The contract called for a purchase price of $55,000 and provided in relevant part:

**4. Settlement.**
a. Date of settlement. Within 45 days from the date of final ratification of this contract, or as soon thereafter as a report on the title can be secured if promptly ordered, and survey, if required, and loan processed, all if promptly applied for, Seller and Purchaser agree to make full settlement in accordance with the terms hereof....

**5. Tenancy.** The property is sold and shall be conveyed free of any existing tenancy, except as follows. With Existing Tenants (hereinafter the 'Tenant(s)'). Without the prior written consent of Purchaser (which shall not be unreasonably withheld) Seller shall not (a) modify the terms of or terminate such tenancy, except for non-payment of rent; or (b) enter into any new leases or tenancies with respect to the property. Seller represents to Purchaser or Agent that on 7/15, 1988 Seller has provided to the Tenant(s) a written notice of the intended sale of the property and a bona fide offer of sale. Seller and Purchaser further acknowledge that, in addition to the rights under the aforesaid bona fide offer of sale, the Tenant(s) has an additional fifteen (15) day right of first refusal to purchase the property during the period specified by District of Columbia law and regulations. Seller further represents and agrees that within two (2) days after final ratification of this contract Seller will hand-deliver to the Tenant(s) the notice of right of first refusal required by District of Columbia law and regulations and a copy of this contract. In the event that prior to the date of this contract Seller has not provided to the Tenant(s) a written notice of the intended sale of the property and a bona

fide offer of sale, Seller represents and agrees that within two (2) days after final ratification of this contract Seller will hand-deliver to the Tenant(s) a written notice of the intended sale of the property, a bona fide offer of sale, the required notice of right of first refusal and a copy of this contract. Upon or after execution of a contract of sale of the property between Seller and the Tenant(s), at the option of Purchaser (exercisable by written notice to Seller) this contract shall be void and the deposit hereunder shall be returned to Purchaser. If, however, the Tenant(s) shall fail to exercise the foregoing rights to purchase the property or shall execute and deliver a valid rejection of said rights, then this contract shall remain in full force and effect. The Seller shall keep Purchaser and Agent apprised of all negotiations, correspondence, contracts and other developments with respect to negotiations with the Tenant(s). All actions required hereunder to be taken by Seller shall be taken in accordance with District of Columbia law and regulations.
If the property is tenant occupied, Purchaser hereby represents that Purchaser [will not] occupy the property. If there is no existing tenancy, Seller agrees to give possession of the property at the time of settlement, and if Seller fails to do so and occupies the property, Seller shall become and be thereafter a tenant at sufferance of Purchaser, and hereby expressly waives all notice to quit provided by law.

3. In *Green v. Gibson,* 613 A.2d 361, 362 (D.C. 1992), we summarized those tenants rights as follows:

First, the owner must "give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." § 45–1631(a). The tenant of a single-family residence has "a reasonable period" of at least sixty days to negotiate the contract of sale, § 45–1638(2), and "[t]he tenant and owner shall bargain in good faith." § 45–1634(a). Second, a tenant has a right of first refusal for a period of fifteen days after

tion of the forty-five day settlement period that "your contract is considered void" because of the failure to settle within that time. At that time, the issue whether the tenants would definitively exercise their right to purchase was unresolved.[4]

Whether viewed as a question of law or fact, we find no grounds for reversing the decision of the trial court that appellant/seller breached his contract of sale with appellee. See *Dodak v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C.1988) (interpretation of ambiguous contract is an issue for finder of fact); *Lee Washington, Inc. v. Washington Motor Truck Transp. Employees Health & Welfare Trust*, 310 A.2d 604, 606 (D.C.1973) (factual findings are not to be disturbed unless plainly wrong or without support in the record); *Howard Univ. v. Best*, 484 A.2d 958, 966–67 & n. 1 (D.C.1984) (interpretation of unambiguous contract is an issue of law). The time limit for settlement provided in the contract is, by its own terms, not absolutely fixed at forty-five days, but instead reflects some flexibility for extension. Indeed, the contract lacks any clause stating that time is of the essence in its provisions. Further, the contract contains a clear recognition of the statutory rights of the tenants to which it is subject. The period for the resolution of such rights plainly could extend beyond forty-five days. See note 3, *supra*. Given these and other facts and circumstances of the controversy at issue, the trial court could reasonably find that the forty-five day settlement provision must be read in conjunction with and as modified by the provision on tenants' rights so as to allow the requisite time for the resolution of those rights. It follows that the trial court could reasonably find that the seller had breached the contract in declaring it void upon the expiration of the forty-five day settlement period. See *1010 Potomac Assocs. v. Grocery Mfrs.*, 485 A.2d 199, 205 (D.C.1984) (contract must be "interpreted as a whole, giving a reasonable, lawful and effective meaning to all its terms").

We find unpersuasive seller's argument that the entire contract was predicated, as a condition precedent to any liability of the seller, upon the tenants' waiving their statutory rights within the forty five day settlement period. No such construction of the contract is compelled by or even the natural reading of its language, considered as a whole.[5] See JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS § 11–8, at 393 (1977) (constructional preference against express conditions). *Brier v. Orenberg*, 90 A.2d 832, 833 (D.C.1952), relied upon by seller, is quite a different case. There, the contract spoke specifically of "contingencies" and the intent to set a binding time limit for settlement was made

the owner has furnished the tenant with a valid sales contract to purchase by a third party. § 45–1637.

The applicable time periods were extended during the fall of 1988 to include an initial thirty day period for the tenant to submit a written statement of interest. *See id.*, 613 A.2d at 362 n. 2.; D.C.Code § 45–1638(1) (1990). The Code also provides for a second sixty day period for the tenant to secure financing with the possibility of thirty days beyond that. D.C.Code § 45–1638(3) (1990). Additionally, these time periods are minimum periods and the seller may afford the tenants a reasonable extension of such periods, without liability under a third party contract. D.C.Code § 45–1633 (1990).

4. As the trial court noted, all the details relative to timing were not entirely clear. Although the contract between seller and purchaser was dated July 12, 1988, the trial court found that it was actually made final at some unspecified time subsequent to that date. Likewise, notwithstanding the recitation in paragraph 5, see

note 2, *supra*, the tenants did not receive the requisite statutory notice of rights until September 9, 1988. An unsigned offer to purchase from the tenants was dated September 14, 1988. Seller's notice of cancellation for failure to timely close the contract was dated September 22. While the purchaser knew of the tenants' offer, it appears that the seller possibly was not aware of this offer at the time he terminated the contract. In any event, when the tenants learned of the termination of the contract of sale by seller, they did not press further to purchase the property at that time. The property was eventually sold to one of the two tenants several years later for $85,000.

5. Appellant is correct that the contract is, as a matter of law, subject to the tenants' rights to purchase under the statute, *see* D.C.Code § 45–1633 (1990), but that fact is hardly conclusive on the question of the interplay between those rights and the rights of the purchaser under the contract, especially as to matters of timing, the issue here.

clear by the use of the words "not later than."

Likewise, we see no basis for seller's contention that the tenants' mere tender of an offer to purchase had, without more, the effect of terminating the contract with purchaser. The question of whether the tenants would in fact finally exercise their full rights under the statute by entering into a binding contract for purchase of the property on terms satisfactory to seller was still in question, as was the ultimate question whether actual consummation of such a contract by a transfer of the property would occur. *Cf. Columbia Plaza Tenants Ass'n v. Antonelli,* 462 A.2d 433 (D.C. 1983) (seller may seek reasonable contractual changes from tenant).[6]

Accordingly, the judgment of the trial court is

*Affirmed.*

---

**6.** We note that paragraph 5 of the contract between seller and purchaser, see note 2, *supra,* provided that the contract became void, at the option of *purchaser,* only after "execution of a contract of sale between Seller and the Tenant(s)."

Appellant's reliance on the language in paragraph 5 of the contract of sale that the property was sold "with existing tenants" is unfounded, since that provision does no more than recognize that the purchaser was to take title subject to that existing tenancy. Likewise, we think appellant miscasts the nature of the relevant documents in arguing that the tenants' September 14, 1988, document must be construed as a binding exercise of the right of first refusal, akin to an option, under the statute.